WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Mario Garcia-Estrada,<br><br>　　　　　Defendant. | No. CR-23-00321-001-TUC-SHR (BGM)<br><br>**Order Accepting and Adopting Report & Recommendation** |

Pending before the Court is a Report and Recommendation ("R&R") (Doc. 67) issued by United States Magistrate Judge Bruce G. Macdonald recommending the Court deny Defendant's Motion to Suppress Pretrial Identification (Doc. 25) and Motion to Suppress Statements (Doc. 28). Defendant has filed an Objection. (Doc. 69.) For the following reasons, the R&R is accepted over Defendant's Objection.

**I.　　BACKGROUND[1]**

The Court adopts the following unobjected-to facts as set forth in the R&R:

> In the early morning of March 4, 2023, Defendant illegally entered the United States from Mexico. (Transcript Evidentiary Hearing ("Tr.") 1/4/2024, Doc. 62 at 6.) USBP cameras spotted Defendant and his companion near Bisbee, Arizona. (*Id.*) Agent L.B. was dispatched to the area, where she encountered Defendant hiding behind some mailboxes. (Id. at 7.) Agent L.B. questioned Defendant in Spanish, and he admitted to being

---

[1] Neither party has objected to the Magistrate Judge's findings of fact. (*See* Doc. 69 generally; Doc. 72 at 1.) Therefore, this Court adopts the factual background as set forth in the R&R by reference. (Doc. 67 at 1–3.)

in the country illegally. (Gov't Ex. 10.) Agent L.B. informed USBP she would secure Defendant in her vehicle before looking for the companion. (Gov't Ex. 14.)

Agent L.B. then searched Defendant, taking custody of his Mexican identification and cell phone. (Doc. 62 at 8–9.) Because Defendant was being cooperative, Agent L.B. escorted him to her patrol car without handcuffs. (*Id.* at 10.) But as the agent attempted to place Defendant in the patrol vehicle, he pushed her to the ground and punched her. (*Id.* at 16–17.) During the altercation, Agent L.B. tried to hold on to Defendant's collar, but he continued to punch her in the face and head multiple times. (*Id.* at 42–43, 47, 52.) When Agent L.B. lost her grip, Defendant fled the scene on foot. (*Id.* at 16–17.) Shortly after 4:00 a.m., Agent L.B. told the camera operator to follow him. (*Id.*) The cameras tracked Defendant to a wash but then lost visual for approximately twenty minutes; however, camera operators did not see anyone exit the wash. (Tr. 2/8/2024, Doc. 64 at 11, 38–39; Doc. 62 at 84; Def. Ex. 64; Gov't Ex. 2 at 32.) There were four directions Defendant could have fled, and each direction was covered by different agents. (Doc. 62 at 83.) Agents, using night vision goggles, tracked Defendant's footprints from the exact location of the lost visual and found him hiding twenty-five yards away. (Doc. 64 at 38–39; Def. Ex. 65; Gov't Ex. 12.) Defendant was then detained. (Doc. 62 at 84.)

Soon thereafter, agents presented Defendant to Agent L.B. for a show-up identification. (*Id.* at 53–54.) USBP Agents John Chavira and Joseph Fernandez brought Defendant to Agent L.B. and asked, "Hey, is this the guy?" (Doc. 64 at 42.) Under a full moon, with the high beams on, and at a distance of approximately the width of her vehicle, Agent L.B. positively identified Defendant as her assailant. (Doc. 62 at 19, 54; Doc. 64 at 55.) Agent L.B. testified she could see Defendant clearly and identified him immediately. (Doc. 62 at 19.) The identification card Agent L.B. collected earlier also matched Defendant. (*Id.* at 20.)

At 5:14 a.m., Defendant was given Form I-214 in Spanish with Miranda warnings. (Gov. Ex. 5; Doc. 62 at 66.) USBP Agent Austin Perks read Defendant his Miranda rights from the form. (Doc. 62 at 66–67.) Defendant signed the form acknowledging he was aware of and understood these rights. (*Id.* at 66, 68.) He was then asked questions for the administrative removal process. (Doc. 64 at 86.)

At 8:58 a.m., USBP Agent Lorena Avenson again read Defendant the Miranda rights in Spanish from Form I-214. (*Id.* at 65, 67.) Agent Avenson asked Defendant if he understood these rights. (*Id.* at 87.) Defendant stated that he understood his rights and did not ask any clarifying questions. (*Id.* at 193.) However, this time, Defendant signed Form FD-395 instead of Form I-214. (*Id.* at 68.) Form FD-395 was written in English. (Gov't Ex. 4.)

Agent Avenson, an FBI Special Agent, and a Cochise County Deputy

> Sheriff then conducted a recorded interview of Defendant. (*Id.* at 62, 64: Def. Ex. 83.) This was the only time Defendant was interviewed about the assault. (Def. Ex. 76.) During the interview, Defendant admitted to punching Agent L.B. and fleeing the scene. (Def. Ex. 69 at 6, 8–15.)

(Doc. 67 at 1–3.) In November 2023, Defendant filed a Motion to Suppress Pretrial Identification (Doc. 25) and a Motion to Suppress Post-Arrest Statements (Doc. 28). On May 10, 2024, the Magistrate Judge issued his R&R, recommending the Court deny both motions. (Doc. 67.)

Defendant timely filed an Objection to the R&R arguing the Magistrate Judge failed to appropriately weigh the facts in its analysis and requesting the Court suppress the post arrest statements because the Spanish *Miranda* warnings administered failed to reasonably convey Defendant's *Miranda* rights, the waiver was not made knowingly, intelligently, and voluntarily, and Defendant's statement was involuntary. (Doc. 69 at 2.) Defendant also objected to the R&R arguing the show-up identification should be suppressed because the Magistrate Judge failed to appropriately weigh the facts in its analysis under the relevant legal standard. (Doc. 69 at 8.)

## II.     STANDARD OF REVIEW

If an objection is made to the R&R, this Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Objections to R&R's "are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge." *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp. 2d 32, 34 (D.P.R. 2004); *see also Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp 380, 382 (W.D.N.Y. 1992) ("The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work" and "[t]herefore is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." (citation omitted)).

## III. RELEVANT LAW

### A. *Miranda* Warnings and Waiver

#### 1. Adequacy of *Miranda* Warnings

Before questioning a suspect, a "person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Yet, *Miranda* warnings do not need to be given exactly as described in *Miranda*; they simply must reasonably convey to the suspect his rights. *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989). For *Miranda* warnings "to be valid, the combination or the wording of its warnings cannot be affirmatively misleading." *United States v. San Juan-Cruz*, 314 F.3d 384, 387 (9th Cir. 2002). "The warning[s] must be clear and not susceptible to equivocation." *Id.* However, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

Reading a defendant his or her rights from a prepared form, like an I-214 form, is generally a sufficient way to advise someone of their *Miranda* rights. *See United States v. Loucious*, 847 F.3d 1146, 1151 (9th Cir. 2017); *see also United States v. Ledesma-Saldivar*, No. 20-50351, 2023 WL 3451029, at *1 (9th Cir. May 15, 2023) (finding the defendant understood her *Miranda* rights after the agent went line by line on the I-214 form, "the form indicated that she understood her rights, she signed the form, and she specifically initialed the section stating that she understood her rights"); *United States v. Morgan*, 738 F.3d 1002, 1005 (9th Cir. 2013) (the defendant was advised "of her *Miranda* rights from the I-214 Form as part of the station's standard processing procedure"); *United States v. Tzunux-Ruiz*, No. CR-10-0016-TUC-RCC, 2010 WL 5691507, at *3 (D. Ariz. Dec. 10, 2010), *report and recommendation adopted*, No. CR 10-16-TUC-RCC DTF, 2011 WL 380656 (D. Ariz. Feb. 3, 2011) (the defendant was advised of his *Miranda* rights and properly waived them after being read the I-214 Form in Spanish and signing the I-215 Form in English).

    2. Waiver of *Miranda* Rights

  A suspect may waive their *Miranda* rights "provided the waiver is made voluntarily, knowingly[,] and intelligently." *Miranda*, 384 U.S at 444. The relinquishment of a right must be voluntary and "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The government bears the burden of establishing by a preponderance of the evidence a waiver was voluntary. *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004). In meeting this burden, "the Government must prove that, under the totality of the circumstances, the defendant was aware of the nature of the right being abandoned and the consequences of such abandonment." *United States v. Crew*, 502 F.3d 1130, 1140 (9th Cir. 2007). In analyzing whether the Government has met this burden, the "[s]everal factors to consider are (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system." *Id.*

  The test for evaluating voluntariness "is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Bautista*, 362 F.3d at 589. For this analysis, the court can consider the following factors: (1) whether defendant was properly advised of their *Miranda* warnings; (2) the length, location, and continuity of the interrogation; and (3) the defendant's maturity, education, physical condition, and mental health. *Withrow v. Williams*, 507 U.S. 680, 693 (1993).

  B. <u>Show-Up Identification</u>

 "Suggestive pretrial identification procedures may be so impermissibly suggestive as to taint subsequent in-court identifications and thereby deny a defendant due process of law." *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985). "Should we find a pretrial procedure impermissibly suggestive, automatic exclusion of identification

testimony is not required." *Id.* "If under the totality of the circumstances the identification is sufficiently reliable, identification testimony may properly be allowed into evidence even if the identification was made pursuant to an unnecessarily suggestive procedure." *Id.* In analyzing the reliability of the identification, the considerations "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

**IV.   ANALYSIS**

Having conducted a de novo review, the Court accepts and adopts the R&R's reasoning. Therefore, the Court will deny the Motion to Suppress Statements and deny the Motion to Suppress Pretrial Identification.

A. *Miranda* Warnings and Waiver

In the Motion to Suppress Statements (Doc. 28) Defendant argues "(1) the government failed to properly advise [Defendant] of his *Miranda* rights prior to eliciting incriminating statements from him while he was in their custody; (2) [Defendant]'s *Miranda* waiver was not made knowingly, intelligently, and voluntarily; and (3) law enforcement elicited an involuntary statement from [Defendant]." (Doc. 28 at 3.) In the Objection, Defendant argues the Magistrate Judge failed to thoroughly consider certain facts in the analysis of the R&R, which the Court will address in turn. (Doc. 67.)

1. Adequacy of Warnings and the I-214 Form

First, Defendant argues the Magistrate Judge "failed to thoroughly address that the officer that read the advisals to [Defendant] from Form I-214 never once alerted him that his statements could be used against him in a non-administrative proceeding . . . ." (Doc. 69 at 3; *see also* Doc. 28 at 4.) The Government responds "[D]efendant's own translator indicated the phrase 'juzgado de leyes' translates to 'law court'" and the warnings reasonably conveyed the rights as required by *Miranda*. (Doc. 72 at 2.) In the R&R, the Magistrate Judge reasoned Form I-214 "sufficiently informed Defendant that any statement

he made could be used against him in court" because the term "juzgado de leyes" was equated to the term "law court" by Defendant's interpreter. (Doc. 67 at 6.) As stated by the Magistrate Judge, "it is not necessary to have a perfect translation for a defendant to comprehend the term's meaning." (*Id.*) Therefore, this argument is unavailing.

Second, Defendant argues the Magistrate Judge "failed to find that Mr. Jaime Fatás-Cabeza is an expert in the Spanish language." (Doc. 69 at 3.) Although the Magistrate Judge did not perform an extensive analysis, he treated Mr. Jaime Fátas-Cabeza as an expert in the R&R. (Doc. 67 at 5 ("[E]ven Defendant's expert's translation provided the basic information necessary for *Miranda*.").) Therefore, this argument is without merit.

Third, Defendant argues the Magistrate Judge "failed to appropriately consider Mr. Jaime Fatás-Cabeza's expert report and his statements at the evidentiary hearing" and overlooked the fact the term "juzgado de leyes" returns no Boolean search results on Google. (Doc. 69 at 3–4.) Although the Magistrate Judge did not expressly state "juzgado de leyes" returns no results on Google, the Magistrate Judge did consider Mr. Jaime Fátas-Cabeza's report. Furthermore, the Magistrate Judge explicitly found the report indicated Defendant was sufficiently informed of his *Miranda* rights because the term translates to "law court." (Doc. 67 at 6.) Therefore, this argument does not warrant overturning the Magistrate Judge's recommendation.

Fourth, Defendant contends the Magistrate Judge "failed to exhaustively examine the defense's argument the Spanish language *Miranda* warnings read to Mr. Garcia-Estrada from Form I-214 did not sufficiently inform him the government was obligated to appoint him legal counsel for free." (Doc. 69 at 5.) The Government responds by arguing the defense's own translation of the warnings included the statement a lawyer would be appointed if Defendant did not have the money for one. (Doc. 72 at 3.) The Magistrate Judge addressed this and found "Defendant was advised at least twice in his native tongue that . . . he had a right to an attorney, and if he could not afford one, a lawyer would be provided to him." (Doc. 67 at 5.) Additionally, the Ninth Circuit has accepted the I-214 Form and the Magistrate Judge discussed how the I-214 Form has been an accepted form

of *Miranda* rights in the District of Arizona. *See Ledesma-Saldivar*, 2023 WL 3451029, at *1; *see also Morgan*, 738 F.3d at 1005. Therefore, this argument is not persuasive, and the Court agrees with the Magistrate Judge's conclusion.

        2. Waiver

First, Defendant argues the Magistrate Judge "failed to comprehensively scrutinize the facts and applied legal standard," i.e. "a *Miranda* waiver must be made with full awareness of the nature of the right to be abandoned and the consequences of the decision to abandon it." (Doc. 69 at 5.) The Government responds by saying Defendant's arguments "amount to a disagreement with the Court's judgement" and the waiver was made knowingly, intelligently, and voluntarily because Defendant "was given his *Miranda* rights twice, signed a written waiver form, and then answered the agent's questions." (Doc. 72 at 3.) Although the Magistrate Judge did not expressly define the standard as stated by Defendant, the Magistrate Judge analyzed the correct factors in determining if there was a proper waiver. The Magistrate Judge weighed Defendant's mental capacity, whether Defendant signed a written waiver, whether Defendant was advised in his native tongue or had a translator, whether Defendant appeared to understand his rights, whether Defendant's rights were individually and repeatedly explained to him, and Defendant had prior experience with the criminal justice system. (Doc. 67 at 4.) Additionally, the Magistrate Judge applied the relevant facts to these factors and found Defendant to have properly waived his *Miranda* rights. (*Id.* at 4–5.) Therefore, the Court agrees with the Magistrate Judge because the R&R properly analyzed the legal standard and weighed the facts accordingly.

Second, Defendant asserts the Magistrate Judge "overlooked the total circumstances when finding that [Defendant] knowingly, intelligently, and voluntarily waived his *Miranda* rights." (Doc. 69 at 5.) Defendant argues the Magistrate Judge only considered the fact Defendant "attended school through the ninth grade and could ask clarifying questions." (*Id.*) In the Objection, Defendant asks the Court to consider (1) the findings of Dr. Menchola's neuropsychological evaluation, (2) Dr. Menchola's opinion "Form I-

214 contained an overwhelming amount of information and utilized complex language," (3) the fact Defendant "cannot appreciate abstract factors," and (4) the fact Defendant is "highly suggestible" and only waived his *Miranda* rights because the officers wanted him to. (*Id.* at 6.) After careful review of Dr. Menchola's neuropsychological evaluation (Doc. 30) and the transcript of her testimony (Doc. 64 at 104–121), the Court finds the Magistrate Judge appropriately considered Defendant's mental capacity as part of the waiver analysis. (Doc. 67 at 4.) Therefore, the Court finds the totality of the circumstances were not overlooked in the analysis of whether there was a valid *Miranda* waiver.

Third, Defendant argues the Magistrate Judge "should have found that law enforcement coerced [Defendant]'s confession by misleading him and providing him with a confusing, uninterpretable, and outdated version of his rights." (Doc. 69 at 7.) Defendant also asserts the fact law enforcement directed Defendant to sign the form "undeservingly received little attention from the Magistrate Court." (*Id.* at 7.) The Magistrate Judge addressed these issues and found "[t]here were no coercive measures taken to make him sign" and "the essence of Defendant's *Miranda* rights were relayed in both the Form I-214 and FD-395." (Doc. 67 at 7.) The Court agrees because the R&R properly analyzed the totality of the circumstances, and upon the Court's de novo review, the Court would come to the same conclusion. *See Bautista*, 362 F.3d at 589.

Fourth, Defendant contends law enforcement failed to translate Form FD-395 to Defendant in Spanish and the form is misleading and confusing and "can have an extraordinary effect on[] someone like [Defendant] who is someone of low mental capabilities." (Doc. 69 at 7–8.) Defendant also contends "the Magistrate Court failed to address the case law the defense cited to support this decision." (*Id.*) The Magistrate Judge considered Defendant's mental health and education level, finding "Defendant's claim that his will was overcome [wa]s unpersuasive." (Doc. 67 at 8.) The Magistrate Judge also found "[a]lthough the second signed Form FD-395 was not a word-for-word replica of what was read from Form I-214, Form FD-395 contained substantially similar information allowing Defendant to make an informed decision." (*Id.* at 5.) In the Motion to Suppress

Statements (Doc. 28) Defendant cites to case law stating the mental condition of a defendant is a significant part of the voluntariness analysis. (Doc. 28 at 13.) One of the cases Defendant cites provides, "courts have found the mental condition of the defendant a more significant factor in the voluntariness calculus," but the case goes on to say, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should dispose of the inquiry into constitutional voluntariness." *Colorado v. Connelly*, 479 U.S. 157, 166 (1986). Although the Magistrate Judge does not expressly address the case law Defendant cites, the R&R does consider Defendant's mental condition and the Magistrate Judge found "there are no noted mental health or physical issues that would lead the Court to believe he was unusually susceptible to the power of suggestion." (Doc. 67 at 8.) Therefore, the Court agrees on this prong and finds the waiver was knowing, voluntary, and intelligent. *See Miranda*, 384 U.S. at 444.

Fifth, Defendant asserts the Magistrate Judge "failed to consider the interrogating officer spoke extremely poor Spanish and should have never been tasked with translating the post-arrest interview." (Doc. 69 at 8.) Although the Magistrate Judge does not expressly consider the interrogating officer's Spanish skills, the Magistrate Judge analyzed the fact Defendant asked the interrogating officer clarifying questions and responded directly to questions being asked in Spanish. (Doc. 67 at 4.) Additionally, the record shows the interrogating agent conducts interviews in Spanish frequently and uses Spanish "on a daily basis" as an agent. (Doc. 64 at 61.) Based on the circumstances, it appears Defendant understood the agent's Spanish, which supports the conclusion Defendant voluntarily and knowingly waived his *Miranda* rights. *See United States v. Mauleon*, 5 Fed. App'x. 782, 785 (9th Cir. 2001) (concluding a post-*Miranda* statement was voluntary and was "unhampered by any language difficulties" based on evidence the Defendant could understand the Spanish being spoken by the interrogating agent).

Sixth, Defendant argues the Magistrate Judge "failed to appropriately consider that the coercive and suggestive nature of the interrogator's questioning, along with [Defendant]'s intellectual disabilities, resulted in [Defendant] making an involuntary

1  statement." (Doc. 69 at 8.) Specifically, Defendant argues the Magistrate Judge "should
2  have more carefully considered that law enforcement directly told [Defendant] that he hit
3  an agent before any admission of the sort was made" because the interrogating agent stated
4  "[o]kay, but you know what I am talking about. Okay, you hit the agent. This then is what
5  I am asking you about. What happened?" (Doc. 69 at 8.) (internal quotation marks
6  omitted). The Magistrate Judge thoroughly considered this statement made by the
7  interrogating officer and found "[t]he interrogation was not prolonged, nor did Agent
8  Avenson repeat her question to obtain the desired answer. Agent Avenson merely stated
9  what she believed to be true and Defendant immediately concurred." (Doc. 67 at 8.)
10 Additionally, upon the Court's de novo review, the record (*see* Doc. 64 at 100–04) supports
11 the finding Defendant was not coerced into answering the questions in any particular way.
12 *See Bautista*, 362 F.3d at 589. Therefore, the Court agrees Defendant's will was not
13 overborne by the line of questioning.

### B. Show-Up Identification

In the Motion to Suppress Pretrial Identification (Doc. 25), Defendant argues the use of the show-up identification at trial would be a violation of Defendant's right to due process because it was unreliable and impermissibly suggestive. (*Id.* at 8.)

In the Objection, Defendant argues the Magistrate Judge identified the correct legal standard for this analysis but failed to weigh the facts appropriately. (Doc. 69 at 8.) The Government responds by arguing "[r]eliability is the linchpin in determining the admissibility of identification testimony," and the Court correctly "examined all the *Biggers* factors concerning reliability and found that the identification was reliable." (Doc. 72 at 4 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).) The *Biggers* factors are to be weighed against "the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114. The purpose of the test is to avoid "a very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 198 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). The Magistrate Judge found under the totality of the circumstances the identification was reliable even though it was also "clearly suggestive."

1 (Doc. 67 at 9). The Magistrate Judge properly analyzed the reliability of the show-up identification and applied the facts appropriately to the *Biggers* factors. *See Biggers*, 409 U.S. at 199.

According to Defendant, the facts improperly weighed include: there were two individuals in the government surveillance recordings and the location was in a migrant corridor with an encampment nearby, there was migrant property littered over the location, law enforcement lost visual of the fleeing suspect for a prolonged period of time, 30 minutes lapsed from the time of the assault to when the show-up occurred, the agent's clothing impacted her sight, the light relied on was moonlight, the total time the agent spent with the assailant was a few minutes and there was much activity occurring, the agent was under stress and suffered injuries, the expert's information on weapon's focus, cross-race identification issues, the agent conducted numerous stops that night performed on Hispanic males, the agent's identification was generic, there was no clothing matching the agent's description seized, there were no images of the defendant wearing the clothing described, and the agent performed the show-up while injured. (Doc. 69 at 9–10.)

Although the Magistrate Judge did not expressly recount and address each of these facts in the R&R, the Court's own review of these facts and the *Biggers* factors, results in the same conclusion. Agent L.B. had the opportunity to "view the criminal at the time of the crime," *Bagley*, 772 F.2d at 492, because she was in close contact with Defendant prior to the assault and had a clear view of Defendant when she walked him to her vehicle. (Doc. 67 at 9.) Agent L.B. was focused on Defendant during the entire encounter and the description she gave to the camera operators led Agent Chavira to the location where Defendant was hiding. (*Id.*) Agent L.B. was also certain about Defendant's identity during the confrontation and the show-up was lit by both headlights and the light of the moon. (*Id.*) Finally, a short length of time passed between the crime and the confrontation, as the show-up was conducted within 30 minutes of the incident. (*Id.*) Therefore, the Court agrees the show-up identification is sufficiently reliable.

. . . .

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** the Report & Recommendation (Doc. 67) is **ACCEPTED**.

**IT IS FURTHER ORDERED** the Motion to Suppress Statements (Doc. 28) and the Motion to Suppress Pretrial Identification (Doc. 25) are **DENIED.**

Dated this 11th day of September, 2024.

Honorable Scott H. Rash
United States District Judge